**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
Ryan Ardi, Esq. (SBN 348738)
*rardi@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>TC HEARTLAND, LLC,<br><br>               Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, (CAL. CIV. CODE §§ 1750, *et seq.*)<br><br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)<br><br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)<br><br>4. BREACH OF EXPRESS WARRANTY<br><br>5. UNJUST ENRICHMENT/RESTITUTION<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

Page No.

I.   SYNOPSIS ............................................................................................................ 1

II.  JURISDICTION AND VENUE ....................................................................... 19

III. PARTIES .......................................................................................................... 20

IV. FACTUAL ALLEGATIONS ........................................................................... 22

    A.    Background on Products and Product Claims ........................................ 22

    B.    Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations .................................................................................... 35

    C.    No Adequate Remedy at Law ................................................................ 38

V.  CLASS ALLEGATIONS ................................................................................. 41

CAUSES OF ACTION ............................................................................................ 44

    COUNT ONE ................................................................................................. 44

    COUNT TWO ................................................................................................ 46

    COUNT THREE ............................................................................................ 47

        "Unfair" Prong ...................................................................................... 49

        "Fraudulent" Prong ............................................................................... 51

        "Unlawful" Prong ................................................................................. 52

    COUNT FOUR .............................................................................................. 54

    COUNT FIVE ................................................................................................ 55

PRAYER FOR RELIEF........................................................................................... 56

DEMAND FOR JURY TRIAL ............................................................................... 57

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Plaintiff Steven Prescott ("**Plaintiff**"), individually, and on behalf of all other similarly situated purchasers, as more fully described herein (the "**Class**"), brings this class action complaint against TC Heartland, LLC ("**Heartland**" or "**Defendant**"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

I.   **SYNOPSIS**

1.   This putative class action arises from Defendant's decades long consumer fraud, marketing "Splenda" to health-conscious consumers, including those with Type 2 diabetes, as a healthy sugar alternative even though Splenda's primary ingredient sucralose has been shown to cause and worsen diabetes, among other harms.

2.   The World Health Organization itself has advised against the consumption of sugar alternatives like sucralose, noting specifically the "increased risk of type 2 diabetes, cardiovascular diseases, and mortality in adults." Other medical studies are in accord.

3.   But the labels on Defendant's Splenda Products[1] tell a different story, including that they are "recommended" by doctors and dietitians, and are for "Diabetes Care," among other false claims (collectively, the "**Diabetes Health Claims**" or the "**Challenged Representations**"), as follows:

   a.   Splenda "Diabetes Care" Shakes: "helps manage blood sugar"; "Diabetes Care."

   b.   Splenda Zero Calorie Sweetener Packets: "#1 Recommended Brand by Doctors and Dietitians"; "Suitable for People with Diabetes."

   c.   Splenda Granulated Zero Calorie Sweetener, Splenda Zero Calorie Sweetener Minis, Splenda Liquid Sweetener Zero, Splenda Water Enhancers, Splenda Premium Sweet Tea, and Splenda Multi-Use Syrup: "Suitable for People with Diabetes."

///

---

[1] The Products are: (1) Splenda Diabetes Care Shakes, (2) Splenda Zero Calorie Sweetener Packets, (3) Splenda Granulated Zero Calorie Sweetener (4) Splenda Zero Calorie Sweetener Minis, (5) Splenda Liquid Sweetener Zero, (6) Splenda Water Enhancer, (7) Splenda Premium Sweet Tea, and (8) Splenda Multi-Use Syrup (collectively, the "**Splenda Products**" or the "**Products**").

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

4.     Reasonable consumers understand the Challenged Representations to mean the Products are healthy sugar alternatives that are also suitable for, or can aid in, the management of blood sugar generally and diabetes specifically. But because the Products are made of sucralose, they are neither healthy nor suitable for these purposes. Rather, according to science yet unknown to consumers, sucralose negatively affects pancreatic beta cells, which promote insulin resistance, destabilizes glucose absorption, causes obesity, and harms the gut microbiome.

5.     The Products therefore do not "help manage blood sugar," do not aid in "diabetes care," and are not "suitable for people with diabetes," as advertised. Instead, the Products negatively affect blood sugar levels and gut health, which can be harmful to everyone and especially those with diabetes. In all cases, consumers are harmed by paying a premium for the health claims touted by Defendant that are untrue.

6.     Further underscoring the need for judicial intervention is the rising rate of diabetes and prediabetes in the United States, having reached approximately 40 million and 96 million, respectively.[2] This population depends on truthful label claims to make safe, informed choices to manage their disease and live a longer and healthier life. Defendant's decision to instead prey on them for profit while knowingly ignoring the science on sucralose is unconscionable and cannot stand under consumer protection laws.

7.     The Products' labels and packaging are shown below as "**Exhibits 1-8.**"

///

///

///

///

///

///

///

///

---

[2] *See Diabetes Statistics*, DIABETES RSCH. INST. (2022), https://diabetesresearch.org/diabetes-statistics/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 1: Splenda Diabetes Care Shakes**.



3

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

 

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

CLASS ACTION COMPLAINT

**Exhibit 2: Splenda Zero Calorie Sweetener**.





CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 3: Splenda Granulated Zero Calorie Sweetener**.



///

///

///

CLASS ACTION COMPLAINT



**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 4: Splenda Sweetener Minis**.




///
///
///
///
///
///
///
///
///
///
///

8

**Exhibit 5: Splenda Liquid Sweetener**.




///

///

///

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

 

18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 6: Splenda Water Enhancer**.




/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265




17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265




18    ///
19    ///
20    ///
21    ///
22    ///
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

13

**Exhibit 7: Splenda Premium Sweet Teas**.





CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit 8: Splenda Multi-Use Syrup**.




///

///

///

///

///

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.      **The Products**. All Splenda Products at issue are manufactured or sold by Defendant to consumers in California and the United States. The Products are:

a.  **Splenda "Diabetes Care" Shakes**: all flavors, varieties, and sizes of Splenda "Diabetes Care" Shake Drinks, including but not limited to, the French Vanilla, Milk Chocolate, and Strawberry Banana flavors;

b.  **Splenda Zero Calorie Sweetener**: all Splenda Zero Calorie Sweetener packets;

c.  **Splenda Granulated Zero Calorie Sweetener**: all Splenda Granulated Zero Calorie Sweetener packages;

d.  **Splenda Zero Calorie Sweetener Minis**: all Splenda Zero Calorie Sweetener Minis;

e.  **Splenda Liquid Sweetener Zero**: all flavors, varieties, and sizes of Splenda Liquid Sweetener Zero, including, but not limited to, the Original and French Vanilla flavors;

f.  **Splenda Water Enhancer**: all flavors, varieties, and sizes of Splenda Water Enhancer, including, but not limited to, Strawberry Watermelon, Sweet Tea, and Mandarin Orange flavors;

g.  **Splenda Premium Sweet Tea**: all flavors, varieties, and sizes of Splenda Premium Sweet Tea, including, but not limited to, the Sweet Tea, White Peach, and Hibiscus flavors; and,

h.  **Splenda Multi-Use Syrup**: all flavors, varieties, and sizes of Splenda Multi-Use Syrup.

9.      **The Deception**. By labeling, packaging, advertising, and marketing its Splenda Products with the Diabetes Health Claims ("helps manage blood sugar," "Diabetes Care," "#1 Recommended Brand by Doctors and Dietitians," "Suitable for People with Diabetes"), Defendant misleads reasonable consumers, including Plaintiff, into believing the Products are healthy sugar alternatives and sugar-alternative drinks that provide diabetes and/or blood sugar management benefits, when they do not.

///

10.    **Primary Dual Objectives**. Plaintiff brings this action individually and on behalf of those similarly situated who purchased the Products during the relevant Class Period (Class defined *infra*), for dual primary objectives: ***One***, Plaintiff seeks, on his behalf and on behalf of the Class, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products as described herein to avoid or mitigate the risk of deceiving the public into believing the Products can provided the advertised benefits, by requiring that Defendant change its business practices, which may include one or more of the following: remove the "Diabetes Care," "helps manage blood sugar," "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes" claims on the Products' labels and/or packaging, and/or discontinuance of the Products' manufacture, marketing, and/or sale. ***Two***, Plaintiff seeks, on his behalf and on behalf of the Class, monetary recovery of the premium consumers paid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted).

## II.    **JURISDICTION AND VENUE**

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section 1332, because: (i) the Class consists of 100 or more members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) minimal diversity exists because at least one Plaintiff (CA) and Defendant (IN) are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

12.    Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims occur in this District. Defendant markets and sells Products in this District, Defendant gains substantial revenue and profits from doing business in this District, and consumers pay Defendant in this District.

13.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts that exist between Defendant and California. Defendant is authorized to do and is doing business in California, and Defendant advertises and solicits business in California.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant has purposefully availed itself of the protections of California law and should reasonably expect to be hauled into court in California for harm arising out of its pervasive contacts with California.

## III.   **PARTIES**

14.   **Plaintiff Steven Prescott**. The following is alleged based upon Plaintiff's personal knowledge:

    a.   **Residence**. Plaintiff is, and at all times relevant was, a resident of California residing in the county of Santa Cruz.

    b.   **Purchase Details and Background Information**. Plaintiff was diagnosed with Type 2 diabetes in 2005 and continues to suffer from diabetes through the time of the filing of this Complaint. Plaintiff purchased the Splenda "Diabetes Care" Shakes in Milk Chocolate and French Vanilla flavors, the Splenda Zero Calorie Sweetener (100 ct.), and the Splenda Liquid Sweetener Zero Products in California within the last four (4) years of the filing of this Complaint. Specifically, Plaintiff purchased the Splenda "Diabetes Care" Shake Products in Milk Chocolate and French Vanilla flavors from a Walgreens store located in Santa Cruz, California in or around September 2021, paying approximately $9.99 for each pack of six. Plaintiff purchased the Splenda Zero Calorie Sweetener (100 ct.) from a Safeway store located in Santa Cruz, California in or around Winter 2020. Plaintiff paid approximately $5.99 for this Product. Finally, Plaintiff purchased the Splenda Liquid Sweetener Zero from a Safeway store located in Santa Cruz, California in or around Summer 2021, paying approximately $5.99.

    c.   **Reliance on Challenged Representations**. In making his purchases, Plaintiff relied on Defendant's labeling, marketing, and advertising claims, that the Products "help[] manage blood sugar," are for "Diabetes Care," are the "#1 Recommended Brand by Doctors and Dietitians," and are "Suitable for People with Diabetes." Plaintiff understood the Products' advertising to mean the Products would be suitable for and aid in managing his diabetes.

///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d.  **Causation/Damages**. Plaintiff would not have purchased the Products, or would not have paid as much for them, had he known  they could not provide the advertised benefits.

e.  **Desire to Repurchase**. Plaintiff continues to see the Products available for purchase and would like to purchase the Products again in the future if he could be sure the Products were compliant with California and consumer protection laws.

f.  **Lack of Personal Knowledge and Expertise**. Plaintiff is not personally familiar with, and does not possess any specialized knowledge skill, experience, or education, in the manufacture of drinks and sugar alternatives.  Therefore, Plaintiff has no way of determining whether Defendant's Products can provide blood sugar management benefits or are particularly suitable for diabetic use, as advertised.

g.  **Inability to Rely**. Plaintiff is, and continues to be, unable to rely on the Products' representations, statements, or function as they are advertised.

15.  **Plaintiff's Future Harm**. Defendant continues to market and sell the Products as sugar alternatives and sugar-alternative drinks that "help[] manage blood sugar," are for "Diabetes Care," are the "#1 Recommended Brand by Doctors and Dietitians," and are "Suitable for People with Diabetes." Plaintiff wants to purchase the Products in the future if he can be sure the Products can provide the advertised benefits. However, Plaintiff is an average consumer who is not sophisticated in, for example, the ingredients that go into making diabetic drinks and sugar alternatives, similar to and including the Products, and he cannot determine if the Products can achieve their advertised benefits. Since Plaintiff would like to purchase the Products again—despite the fact that the Products currently cannot achieve the advertised benefits—Plaintiff would likely and reasonably, but incorrectly, assume the Products can achieve the advertised benefits. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they can achieve the advertised benefits of diabetes care and blood sugar management. In this regard, Plaintiff is currently and, in the future, deprived of the ability to rely on the Products' labeling and packaging. However, an

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1    injunction prohibiting use of the Challenged Representations unless true would enable Plaintiff to

2    rely confidently on the Product labels in making his future purchase decisions.

3        16.    **Defendant TC Heartland, LLC** is a corporation headquartered in Carmel, Indiana.

4    Heartland is located at 14390 Clay Terrace Blvd., Suite 205, Carmel, Indiana 46032. Defendant,

5    directly and through its agents, has substantial contacts with and receives substantial benefits and

6    income from and through the state of California. Defendant is the owner, manufacturer, and/or

7    distributor of the Products, and is a company that created and/or authorized the false, misleading,

8    and deceptive labeling and packaging for the Products. Defendant and its agents manufactured,

9    advertised, marketed, and sold the Products at issue nationwide and in this judicial district. The

10   unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared,

11   authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated

12   throughout the state of California and nationwide by Defendant and its agents to deceive and mislead

13   consumers into purchasing the Products.

14   **IV.    FACTUAL ALLEGATIONS**

15       **A.    Background on Products and Product Claims**

16       17.    **Sucralose**.  Sucralose was discovered in 1976 by chemists who were testing it for use

17   as an insecticide. Because of its sweet taste, it was also found to be useful as a food. Sucralose is

18   synthesized by chlorinating the sugar sucrose, by substituting three hydroxyl groups with three

19   chlorine atoms.  Sucralose is approximately 600 times sweeter than sucrose, or sugar. In its pure

20   form, it is known as sucralose. When mixed with fillers, namely dextrose and maltodextrin, it is

21   known as "Splenda," Defendant's global brand of artificial sweeteners and related food products.

22   Splenda is "the most recognizable and iconic low-calorie sweetener brand in the world."[3]

23       18.    **Diabetes, Generally**. Roughly 37.3 million Americans, or 1 in 10 Americans, have

24   diabetes.[4] Diabetes is characterized by high blood sugar caused by the inability to produce enough

---

[3] *See Splena*, OUR STORY, https://www.splenda.com/about-splenda/#:~:text=From%20the%20first%20yellow%20Splenda,new%20compound%20made%20from%20sugar (last visited Aug. 16, 2023).

[4] *The Facts, Stats, and Impacts of Diabetes*, CDC, https://www.cdc.gov/diabetes/library/spotlights/diabetes-facts-

insulin—a hormone that allows sugar to be removed from the blood stream and used for energy in the cells of the pancreas.[5] The most common form of diabetes is Type 2 diabetes, which impairs the pancreas due to insulin resistance typically as a result of diet and lifestyle factors.[6] Insulin resistance means that the cells in the pancreas stop responding to insulin that normally triggers the flow of glucose into the cells.[7] When the cells become resistant, insulin is no longer able to signal glucose uptake, so it remains in the blood stream where it causes problems like organ failure and diabetes.[8] People who suffer from Type 2 diabetes may be prescribed medicine but generally manage the disease via exercise and healthy eating. Accordingly, people with Type 2 diabetes seek out food products that are sugar-free, low in calories, and can help them manage their blood sugar.

19.    **The Products Contain Express and Implied Health Claims**. The Product labels contain express claims that they are suitable for and/or aid in managing diabetes. *See* Diabetes Health Claims, *supra*. The Diabetes Health Claims not only serve as express claims regarding diabetes, but they also serve as implied health claims to all consumers, including non-diabetics, who reasonably understand the Diabetes Health Claims to mean the Products are a healthy alternative to sugar for people with diabetes as well as those without.

20.    The Splenda "Diabetes Care" Shakes contain the following claims on the packaging:

a.   "Helps Manage Blood Sugar."

b.   "Diabetes Care."

c.   "#1 Recommended Brand by Doctors and Dietitians."

21.    The Splenda Zero Calorie Sweetener Packets and the Splenda Granulated Zero Calorie Sweetener contain the following statements on the packaging:

a.   "#1 Recommended Brand by Doctors and Dietitians."

b.    "Suitable for People with Diabetes."

///

---

stats.html#:~:text=37.3%20million%20Americans%E2%80%94about%201,t%20know%20they%20have%20it (last reviewed Apr. 4, 2023).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

22. The Splenda Zero Calorie Sweetener Minis, Splenda Liquid Sweetener Zero, Splenda Water Enhancer, Splenda Premium Sweet Tea, and the Splenda Multi-Use Syrup contain the following statement on the packaging: "Suitable for People with Diabetes."

23. The deliberateness of Defendant's fraudulent scheme is exemplified by the ubiquitous yellow "Splenda" packet itself, which consumers are routinely exposed to in coffee shops and restaurants across the United States. Among all the ingredients and nutrition facts, the only product claim Defendant elected to highlight is "Suitable for People with Diabetes," setting it off against the yellow and all the other nutritional facts, in its own eye-catching red font:



/// 
/// 
/// 
/// 
/// 
/// 
/// 

CLASS ACTION COMPLAINT



24. **The Products Contain Sucralose, Which is Harmful, Especially to Diabetics**. The primary ingredient in all the Products is sucralose. While the Products purport to be suitable for people with diabetes and aid with blood sugar management, sucralose has been shown to induce and worsen obesity, metabolic syndrome, and Type 2 diabetes itself by interfering with bodily responses that contribute to control glucose and energy balance.[9] The ingestion of sucralose causes blood sugar destabilization by triggering an abnormally high reaction to glucose, causing it to irrationally spike after consuming a normal meal.[10] A 2017 study found that after only two weeks of daily sucralose intake, there was a glucose absorption enhancement, worsening blood glucose response to external glucose, and a deleterious impact on glycemic control, which causes a predisposition for diabetes in healthy adults.[11]

---

[9] M. Yanina Pepino, *Metabolic Effects of Non-Nutritive Sweeteners*, 152 (PART B) PHYSIOLOGY & BEHAV. 450, 450 (Dec. 1, 2015), https://www.sciencedirect.com/science/article/pii/S0031938415003728#bb0215.

[10] M. Yanina Pepino et al., *Sucralose Affects Glycemic and Hormonal Responses to an Oral Glucose Load*, 36(9) DIABETES CARE 2530, 2530-34 (Apr. 30, 2013), https://pubmed.ncbi.nlm.nih.gov/23633524/.

[11] Richard Young et al., *Impact of Artificial Sweeteners on Glycaemic Control in Healthy Humans*, EUROPEAN ASS'N FOR THE STUDY OF DIABETES, (Sept. 14, 2017), https://www.easd.org/media-centre/home.html#!resources/impact-of-artificial-sweeteners-on-glycaemic-control-in-healthy-humans.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

25.    In an even more recent large-scale study of 105,588 participants conducted in July 2023 researchers studied the relationship between sucralose (and other artificial sweeteners) and the risk of Type 2 diabetes. The study found that as compared to non-consumers of sucralose, those who consume sucralose had a higher risk of developing Type 2 diabetes.[12]

26.    Further undermining Defendant's Diabetes Health Claims is a May 2023 comprehensive review of 11 meta-analyses derived from 7 systemic reviews finding that consumption of artificially sweetened beverages, including sucralose, is associated with a higher risk of obesity, Type 2 diabetes, hypertension, cardiovascular disease incidence, and all-cause mortality.[13]

27.    **Sucralose Damages Pancreatic Beta-Cells**. While the Products claim to "help manage blood sugar" the truth is sucralose *deregulates* blood sugar by disrupting the gut microbiome, causing gut dysbiosis, and damaging residual functioning of the pancreas through multiple pathways. It induces a prediabetic state by killing beta cells of the pancreas that release insulin, which after prolonged consumption leads to diabetes.[14] When these beta cells die, insulin is no longer produced, and diabetes becomes more severe and permanent.[15] Sucralose can also cause necrosis of the pancreas and inflammation of the liver because of its negative effect on gut health.[16]

28.    **Sucralose Causes Insulin Resistance**. Sucralose decreases insulin sensitivity, meaning it causes cells to be more resistant to insulin, which signals the cells to take sugar out of

---

[12] Charlotte Debras et al., *Artificial Sweeteners and Risk of Type 2 Diabetes in the Prospective NutriNet-Sante Cohort*, DIABETES CARE (July 25, 2023), https://diabetesjournals.org/care/article/doi/10.2337/dc23-0206/153434/Artificial-Sweeteners-and-Risk-of-Type-2-Diabetes.

[13] Cristina Diaz et al., *Artificially Sweetened Beverages and Health Outcomes: An Umbrella Review*, 14(4) ADVANCES IN NUTRITION 710, 710 (July, 2023), https://www.sciencedirect.com/science/article/pii/S2161831323003150?via%3Dihub.

[14] S. Gupta et al., *Sucralose Induced Pancreatic Toxicity in Albino Rats: Histomorphological Evidence*, 31(2) J. MORPHOL. SCI. 123, 125-6 (2014), https://d-nb.info/1181607574/34.

[15] Patrik Rorsman & Frances M. Ashcroft, *Pancreatic β-Cell Electrical Activity and Insulin Secretion: Of Mice and Men*, 98(1) PHYSIOLOGICAL REV. 117, 117-118 (Jan. 1, 2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5866358/.

[16] Xiaoming Bian et al., *Gut Microbiome Response to Sucralose and Its Potential Role in Inducing Liver Inflammation in Mice*, 8 FRONT PHYSIOL 487, 487-88 (July 24, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5522834/.

26

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the bloodstream.[17] For example, in a 2020 study, participants were given either sucralose or water followed by a glucose tolerance test. The study found that those who had consumed sucralose had higher blood insulin levels.[18] This can cause a suffering pancreas, as seen in Type 2 diabetics, to work even harder, pumping more and more insulin resulting in the cells becoming more resistant. Over time, the pancreas can shut down and the cells no longer respond to insulin (i.e., insulin resistance) which can cause high blood sugar and diabetes.[19]

29.     The insulin resistance caused by sucralose also impacts healthy individuals. A short-term study (14 days) that tested sucralose consumption at the 15% Acceptable Daily Intake (ADI) in healthy participants found a significant decrease in insulin sensitivity.[20] Another short-term study (10 days) found that when sucralose is paired with a carbohydrate such as maltodextrin, as it is in Defendant's Products, its consumption decreases insulin sensitivity in non-diabetic participants.[21] Likewise, following a 4-week consumption of sucralose in healthy participants in a randomized, double-blind, placebo-controlled study, sucralose was found to decrease insulin sensitivity.[22] Notably, in a randomized, placebo-controlled clinical trial, even a single 48 mg sip of sucralose

---

[17] Yanina M. Pepino, *The Not-So Sweet Effects of Sucralose on Blood Sugar Control*, 108(3) THE AM. J. OF CLINICAL NUTRITION 431, 431-432 (Sept., 2018), https://www.sciencedirect.com/science/article/pii/S0002916522029665?via%3Dihub.

[18] Kushagra Mathur et al., *Effect of Artificial Sweeteners on Insulin Resistance Among Type-2 Diabetes Mellitus Patients*, 9 (1) J. FAM. MED. PRIM. CARE 69, 69 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7014832/

[19] *Type 2 Diabetes*, CDC, https://www.cdc.gov/diabetes/basics/type2.html (last visited Aug. 16, 2023).

[20] Alonso Romo-Romo et al., *Sucralose Decrease Insulin Sensitivity in Healthy Subjects: A Randomized Controlled Trial*, 108 AM. J. CLINICAL NUTRITION 485, 485 (Sept. 1, 2018), https://pubmed.ncbi.nlm.nih.gov/30535090/; Pepino, *supra* note 17.

[21] Jelle R. Dalenberg et al., *Short-Term Consumption of Sucralose With, but Not Without, Carbohydrate Impairs Neural and Metabolic Sensitivity to Sugar in Humans*, 31(3) CELL METABOLISM 493, 493 (Mar. 3, 2020), https://www.cell.com/cell-metabolism/fulltext/S1550-41312030057-7.

[22] Amornpan Lertrit et al., *Effects of Sucralose on Insulin and Glucagon-Like Peptide-1 Secretion in Healthy Subjects: A Randomized, Double-Blind, Placebo-Controlled*, 55-56 NUTRITION 125, 125 (Nov., 2018), https://www.sciencedirect.com/science/article/abs/pii/S0899900718302557?via%3Dihub.

CLASS ACTION COMPLAINT

increased the amount of insulin in the blood to an unhealthy level (known as hyperinsulinemia) in otherwise healthy participants.[23]

30.     Moreover, because sucralose acts like glucose, it gets mistaken as such by the sweet taste receptors in the pancreas. This weakens insulin receptors, causing the release of insulin that leads to Type 2 diabetes and obesity.[24] Sucralose also causes insulin resistance by triggering faster insulin secretion rate while decreasing insulin clearance (i.e., removal from the blood).[25] This heightened level of insulin in the blood further weakens insulin receptors which prevents cells from taking in glucose, causing permanent high blood sugar and a weakened pancreas—a feature of diabetes.[26]

31.     **Sucralose Harms the Gut Microbiome**. Sucralose has also been shown to cause gut dysbiosis (i.e., an imbalance between good and bad bacteria in the gut) and inflammation.[27] A disruption in the bacterial environment in the gut from sucralose causes inflammation, worsens insulin resistance, and promotes obesity and increases sugar cravings.[28] Even minimal amounts of sucralose intake can increase acidity of the entire GI tract and kill good bacteria for weeks after consumption.[29] Interference with gut microbiota from sucralose also induces glucose intolerance and interacts with sweet-taste receptors in the digestive system that play a vital role in glucose absorption and insulin secretion, meaning sucralose deregulates blood sugar management.[30] Additionally, the sucralose induced gut dysbiosis triggers beta cell destruction of the pancreas, an

---

[23] Angelica Y. Gomez-Arauz et al., *A Single 48mg Sucralose Sip Unbalances Monocyte Subpopulations and Stimulates Insulin Secretion in Healthy Young Adults*, J. IMMUNOL RSCH. (Apr. 28, 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6512026/.
[24] Mathur, *supra* note 18.
[25] *Id.*
[26] *Id.*
[27] Susan S. Schiffman & Kristina I. Rother, *Sucralose, A Synthetic Organochlorine Sweetener: Overview of Biological Issues*, 16 J. OF TOXICOLOGY AND ENV'T HEALTH, PART B 399, 399 (Nov. 12, 2013), https://www.tandfonline.com/doi/pdf/10.1080/10937404.2013.842523?noFrame=true.
[28] Clare J. Lee et al., *Gut Microbiome and Its Role in Obesity and Insulin Resistance*, 1461(1) ANN. N.Y. ACAD. SCI. 37, 37 (May 14, 2019), https://pubmed.ncbi.nlm.nih.gov/31087391/.
[29] Mohamed B. Abou-Donia et al, *Splenda Alters Gut Microflora and Increases Intestinal P-Glycoprotein and Cytochrome P-450 in Male Rats*, 71 J. TOXICOL ENV'T HEALTH 1415 (2008) https://pubmed.ncbi.nlm.nih.gov/18800291/.
[30] *Id.*; Jotham Suez et al., *Artificial Sweeteners Induce Glucose Intolerance by Altering the Gut Microbiota*, 514 NATURE 181, 181 (Sept. 17, 2014), https://www.nature.com/articles/nature13793.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

organ necessary for our bodies to produce insulin which naturally regulates blood sugar.[31]  In a randomized clinical trial study, young, healthy participants who consumed 48 mg of sucralose every day for ten weeks were found to have gut dysbiosis.[32] A 2018 study conducted over 6-weeks found that sucralose worsened gut inflammation in mice with Crohn's disease.[33]

32.    **Sucralose Promotes Obesity**. Sucralose also increases sugar cravings, which can lead to overconsumption of sugars and cause weight gain and obesity.[34] Obese individuals who consume sucralose are found to have much higher blood sugar and insulin spikes in response to normal sugar, which not only promotes weight gain and worsens obesity, but also promotes insulin resistance as it impairs insulin signaling that causes less glucose uptake from the blood.[35] Thus, consumption of sucralose increases the risk of Type 2 diabetes and obesity, thereby decreasing the overall health and life expectancy of an individual.[36] Sucralose can also induce liver inflammation,[37] and further exacerbate fatty liver, or non-alcoholic liver disease. A small-sized 2018 study of a mix of healthy and obese breastfeeding mothers, found that ingestion of a 12-ounce diet soda with 68

---

[31] Gupta, *supra*, note 14.

[32] Lucia A. Mendez-Garcia et al., *Ten-Week Sucralose Consumption Induces Gut Dysbiosis and Altered Glucose and Insulin Levels in Healthy Young Adults*, 10 MICROORGANISMS 434, 434 (Feb. 14, 2022), https://www.mdpi.com/2076-2607/10/2/434/htm.

[33] Alexander Rodriguez-Palacios et al., *The Artificial Sweetener Splenda Promotes Gut Proteobacteria, Dysbiosis, and Myeloperoxidase Reactivity in Crohn's Disease—Like Ileitis*, 24 INFLAMMATORY BOWEL DISEASE 1005, 1005 (Mar. 15, 2018), https://academic.oup.com/ibdjournal/article/24/5/1005/4939054.

[34] Qing Yang, *Gain Weight by "Going Diet?" Artificial Sweeteners and the Neurobiology of Sugar Cravings*, 83 YALE J. BIOL. MED. 101, 101 (2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2892765/; Qiao-Ping Wang, et al., *Sucralose Promotes Food Intake Through NPY and a Neuronal Fasting Response*, 24 CELL METABOLISM 75, 75 (2016), https://www.cell.com/cell-metabolism/comments/S1550-4131(16)30296-0#secsectitle0010.

[35] Hubert Kolb et al., *Insulin: Too Much of a Good Thing is Bad*, BMC MED.,  (2020), https://bmcmedicine.biomedcentral.com/articles/10.1186/s12916-020-01688-6#:~:text=Because%20of%20the%20largely%20unrestricted,increased%20risk%20of%20cardiovascular%20disease; Susan E. Swithers, *Artificial Sweeteners Produce the Counterintuitive Effect of Inducing Metabolic Derangements*, 24 TRENDS ENDOCRINOLOGY & METABOLISM 431, 431 (Sept. 24, 2013), https://pubmed.ncbi.nlm.nih.gov/23850261/.

[36] Kolb, *supra,* note 27.

[37] Xiaoming Bian et al., *Gut Microbiome Response to Sucralose and its Potential Role in Inducing Liver Inflammation in Mice*, 8 FRONT. PHYSIOL. 487, 487 (July 23, 2017), https://www.frontiersin.org/articles/10.3389/fphys.2017.00487/full.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

mg of sucralose transferred into breastmilk up to 6 hours after consumption.[38] A study conducted in February 2023 found that newborns whose mothers heavily consumed sucralose during their pregnancy had a higher birth weight than those whose mothers consumed sucralose and other non-nutritive sweeteners only sporadically.[39] The newborns were significantly heavier and above the 95th percentile of birth weight.

33.    **Surcalose-6-Acetate, a Sucralose Metabolite, has Been Linked to Genotoxicity**. Sucralose-6-acetate is an impurity left over from the manufacturing process of sucralose. Regardless of whether a product contains Sucralose-6-acetate in its original formulation, it is a metabolite of sucralose, meaning it is formed in the gut once sucralose is digested. A study published on May 29, 2023, found evidence that sucralose-6-acetate is genotoxic (i.e., destroys human DNA).[40] The study reaffirms the harm sucralose causes by promoting diabetes and destabilizing blood sugar. Further, sucralose-6-acetate, when exposed to human intestinal cells, increased inflammation, oxidative stress, and caused cancer. The study further showed that sucralose disrupts essential cellular processes that metabolize toxins, increasing risk of adverse toxicological exposures and cellular toxicity. Both sucralose and sucralose-6-acetate impair the intestinal barrier to cause a "leaky gut," which is problematic because toxins that normally would be flushed out of the body in feces are instead leaked out of the gut and absorbed into the bloodstream where they cause disease.

---

[38] Kristina I. Rother et al., *Pharmacokinetics of Sucralose and Acesulfame-Potassium in Breast Milk Following Ingestion of Diet Soda*, 66 J. PEDIATR GASTROENTEROL NUTRITION 466, 466 (Mar., 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5825238/.

[39] Jose Alfredo Aguayo-Guerrero et al., *Newborns from Mothers Who Intensely Consumed Sucralose during Pregnancy Are Heavier and Exhibit Markers of Metabolic Alteration and Low-Grade Systemic Inflammation: A Cross-Sectional, Prospective Study*, 11 BIOMEDICINES 650, 650 (Feb. 21, 2023), https://www.semanticscholar.org/paper/Newborns-from-Mothers-Who-Intensely-Consumed-during-Aguayo-Guerrero-M%C3%A9ndez-Garc%C3%ADa/7e741d2539290a3f4583bc1f323c07bffcf8d989.

[40] Susan S. Schiffman et al., *Toxicological and Pharmacokinetic Properties of Suraclose-6-Acetate and its Parent Sucralose: In Vitro Screening Assays*, 26(6) J. OF TOXICOLOGICAL AND ENV'T HEALTH, PART B 307, 307 (May 29, 2023), https://www.tandfonline.com/doi/full/10.1080/10937404.2023.2213903.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

34.    **Sucralose Linked to Colon Cancer in Mice**. A 2020 study conducted on mice that consumed 1.5 mg of sucralose in water over the course of 6-weeks found that sucralose caused an increase in the number and size of cancerous colon tumors.[41]

35.    **Sucralose Used at High Temperatures in Cooking Can Lead to the Formation of Toxic or Carcinogenic Compounds**. Studies have found that sucralose used in cooking at high temperatures, typically over 200 F, can lead to the formation of chlorinated organic compounds that lead to diseases such as cancer, liver, and kidney damage.[42]

36.    **Carrageenan, Another Ingredient in the Splenda "Diabetes Care" Shakes, Can Also Lead to Diabetes by Causing Glucose Intolerance and Insulin Resistance**. Exposure to low concentration (10 mg/L) of one of the Product's additives, carrageenan, for only six days led to carrageenan-induced inflammation. This impairs insulin signaling, meaning the cells do not take up glucose and the resulting high blood glucose levels cause organ damage over time.[43] As a result, another study further concluded that the "*elimination* of dietary ingestion of carrageenan [like that in the Products] may help in efforts to reduce the incidence of diabetes and its associated morbidities."[44] (emphasis added). Despite this science, Defendant encourages diabetics and others to consume the Products, and thus carrageenan, by virtue of the Challenged Representations.

37.    **The World Health Organization ("WHO") Advises Against the Consumption of Sucralose**. On May 15, 2023, the WHO released a set of guidelines urging against the consumption of sucralose, among other non-sugar sweeteners, "to control body weight or reduce the risk of noncommunicable diseases (NCDs)," including diabetes. The WHO's advisory comes

[41] Xueting Li et al., *Sucralose Promotes Colitis-Associated Colorectal Cancer Risk in a Murine Model Along with Changes in Microbiota*, 10 FRONT. ONCOL. (June 3, 2020), https://www.frontiersin.org/journals/oncology/articles/10.3389/fonc.2020.00710/full.

[42] Andreas Eisenreich et al., *Heating of Food Containing Sucralose Might Result in the Generation of Potentially Toxic Chlorinated Compounds*, 321 FOOD CHEM. (Aug. 15, 2020), https://pubmed.ncbi.nlm.nih.gov/32278984/; Diogo N. de Oliveria et al., *Thermal Degradation of Sucralose: A Combination of Analytical Methods to Determine Stability and Chlorinated Byproducts*, 5 Sci. Reps. 1, 1-4 (Apr. 15, 2015), https://www.nature.com/articles/srep09598.pdf.

[43] Sumit Bhattacharyya et al., *Exposure to Common Food Additive Carrageenan Alone Leads to Fasting Hyperglycemia and in Combination With High Fat Diet Exacerbates Glucose Intolerance and Hyperlipidemia Without Effect on Weight*, 2015 J. DIABETES RES. 1, 3-11 (Mar. 25, 2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4390184/pdf/JDR2015-513429.pdf.

[44] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

on the heels of "the findings of a systematic review of the available evidence . . . suggest[ing] that there may be potential undesirable effects from long-term use of NSS [non-sugar sweeteners], such as an *increased risk of type 2 diabetes*, cardiovascular diseases, and mortality in adults."[45] (emphasis added). Still, Defendant continues to tout the Products as for "Diabetes Care" and "recommended" by doctors and dieticians.

38.    **The Center for Science in the Public Interest ("CSPA") Advises Against Consumption of Sucralose**. The CSPA, one of the oldest, independent, science-based, and consumer advocacy non-profit organizations in the United States has also stated that sucralose, like that found in the Products, should be "avoided," after a large 2016 Italian study on male mice found that sucralose caused leukemia and related blood cancers.[46]

39.    **Even the First Round of Testing for FDA Approval Found Sucralose to Affect Blood Sugar**. In 1999, the FDA approved sucralose as a general-purpose sweetener. Still, a six-month clinical test on sucralose conducted during the first round of FDA-approval found sucralose to have a *negative* effect on blood sugar.[47] This stands in contrast to Defendant's false claim that the Products "help[] manage blood sugar."

40.    **Petition to the Federal Trade Commission ("FTC") to Investigate the Safety of Sucralose**. Consistent with the science demonstrating the falsity of the Challenged Representations, the FTC has also been petitioned to investigate deceptive advertising claims by Tate & Lyle—the supplier for Defendant's sucralose—among others based on the evidence demonstrating sucralose metabolizes and bioaccumulates in rats.[48]

41.    **The Products' Substantial Similarity**. Plaintiff purchased the Splenda "Diabetes Care" Shakes in the Milk Chocolate and French Vanilla Product flavors ("**Purchased Shakes**"), the

---

[45] *WHO Advises Not to Use Non-Sugar Sweeteners for Weight Control in Newly Released Guideline*, WORLD HEALTH ORG., (May 15, 2023), https://www.who.int/news/item/15-05-2023-who-advises-not-to-use-non-sugar-sweeteners-for-weight-control-in-newly-released-guideline.

[46] *Sucralose*, CTR. FOR SCI. IN THE PUB. INT., https://www.cspinet.org/article/sucralose (last updated Jan. 4, 2021).

[47] Food Additives Permitted for Direct Addition to Food for Human Consumption; Sucralose, 21 C.F.R. Part 172 (Apr. 3, 1998), https://www.govinfo.gov/content/pkg/FR-1998-04-03/html/98-8750.htm.

[48] Andrew Smith, *Request for Investigation of Deceptive Advertising of Sucralose*, U.S. RIGHT TO KNOW (Nov. 19, 2018), https://usrtk.org/wp-content/uploads/2018/11/Sucralose-FTC-letter.pdf.

CLASS ACTION COMPLAINT

Splenda Zero Calorie Sweetener Packets ("**Purchased Sweetener**"), and the Splenda Liquid Sweetener Zero Original flavor ("**Purchased Liquid Sweetener**") (collectively, the "**Purchased Products**").

42.      The Splenda Diabetes Care Shake Strawberry Banana flavor is substantially similar to the Purchased Shakes (collectively the "**Shakes**"):

      a.   **Defendant**. The Shakes are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

      b.   **Brand**. All Shakes are sold under the same brand name: Splenda.

      c.   **Purpose**. All Shakes are intended to be consumed.

      d.   **Key Ingredients**. All Shakes are made largely from the same ingredients, including, but not limited to, sucralose, carrageenan, water, microfiltered milk protein, canola oil, short-chain fructooligosaccharides, allulose, natural and artificial flavor, potassium citrate, salt, sunflower lecithin, dipotassium phosphate, and gellan gum.

      e.   **Marketing Demographics**. All Shakes are marketed directly to diabetic, pre-diabetic, and health-conscious consumers for personal consumption.

      f.   **Representations**. The Shakes are labeled and advertised using the same Challenged Representations (i.e., "Diabetes Care," "helps manage blood sugar," and "#1 Recommended Brand by Doctors and Dietitians").

      g.   **Packaging**. The Shakes are similarly packaged, including using similar styles for written content. The Products' front labeling share the same marketing claims, including brand identity and identity of the product line.

      h.   **Misleading Effect**. The misleading effect of the Challenged Representations on consumers is the same for all Shakes—consumers overpay a premium for a product that claims to provide blood sugar management benefits, despite the inclusion of ingredients like sucralose and carrageenan (in the Shakes) that worsen blood sugar.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

43.     The Splenda Granulated Zero Calorie Sweetener ("Granulated Sweetener") is substantially similar to the Purchased Sweetener as follows:

    a.  **Defendant**. The Granulated Sweetener is manufactured, sold, marketed, advertised, and labeled by Defendant.

    b.  **Brand**. The Granulated Sweetener is sold under the same brand name: Splenda.

    c.  **Purpose**. The Granulated Sweetener is intended to be consumed.

    d.  **Key Ingredients**. The Granulated Sweetener is made largely from the same ingredient, sucralose.

    e.  **Marketing Demographics**. The Granulated Sweetener is marketed directly to diabetic, pre-diabetic, and health-conscious consumers for personal consumption.

    f.  **Representations**. The Granulated Sweetener is labeled and advertised using the same Challenged Representations (i.e., "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes).

    g.  **Misleading Effect**. The misleading effect of the Challenged Representations on consumers is the same for the Granulated Sweetener Product—consumers over-pay a premium for a sugar substitute that claims to be suitable for people with diabetes, despite the inclusion of ingredients like sucralose that worsen blood sugar and cause other health consequences for consumers, especially diabetics.

44.     The Splenda Zero Calorie Sweetener Minis ("Minis"), Splenda Liquid Sweetener Zero including, without limitation the French Vanilla flavor ("Liquid Sweetener"), Splenda Water Enhancer, including, without limitation the Strawberry Watermelon, Sweet Tea, and Mandarin Orange flavors ("Water Enhancer"), Splenda Premium Sweet Tea, including, without limitation, the Sweet Tea, White Peach, and Hibiscus flavors ("Tea"), and the Splenda Multi-Use Syrup ("Syrup") are substantially similar to the Purchased Liquid Sweetener as follows:

    a.  **Defendant**. The Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup are manufactured, sold, marketed, advertised, and labeled by Defendant.

    b.  **Brand**. The Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup are sold under the same brand name: Splenda.

c.   **Purpose**. The Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup are intended to be consumed.

d.   **Key Ingredients**. The Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup are made largely from the same ingredient, sucralose.

e.   **Marketing Demographics**. The Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup are marketed directly to diabetic, pre-diabetic, and health-conscious consumers for personal consumption.

f.   **Representations**. The Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup are labeled and advertised using the same Challenged Representations (i.e., "Suitable for People with Diabetes).

g.   **Misleading Effect**. The misleading effect of the Challenged Representations on consumers is the same for the Minis, Liquid Sweetener, Water Enhancer, Tea, and Syrup Products—consumers over-pay a premium for an artificial sweetener product that claims to be suitable for people with diabetes, despite the inclusion of ingredients like sucralose that worsen blood sugar and cause other health consequences for consumers, especially diabetics.

B.   **Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations**

45.   **Representations on the Products' Labels**. Defendant manufactures, markets, advertises, labels, packages, and sells the Products with the following representations: "helps manage blood sugar," "Diabetes Care," "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes," respectively (*See* **Exhibits 1-8**," *supra*).

46.   Additionally, on the "Diabetes Care" shakes, a small plus-like symbol appears next to the false "HELPS MANAGE BLOOD SUGAR" claim, leading to this side-label statement: "Learn More at Splenda.com." To the extent consumers visit Splenda.com, it only furthers the deception. The website devotes an entire menu page to "Diabetes Management," *instructing* consumers to use Splenda sweeteners to "help manage blood sugar" and otherwise reinforcing the

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

false label claims that the Products are suitable for managing blood sugar generally and for diabetics specifically, even though they are not.

47.     Further doubling down on the false Diabetes Health Claims on the "Diabetes Care" shakes, Defendant appends a small "*" to "#1 Recommended Brand by Doctors and Dieticians," which leads to the following side-label statement: "The Splenda brand family is the sweetener brand recommended most by healthcare professionals clinically treating patients." On the Splenda Zero Calorie Sweeteners and the Granulated Zero Calorie Sweeteners the "*" leads to a similar statement, as follows: "Among healthcare professionals clinically treating patients." Consumers reasonably understand these statements to mean the Products are somehow medically approved for the "clinical" treatment of diabetes or other health conditions, when they are not.

48.     **False "Suitable for People with Diabetes" Claim.** Certain of Defendant's Products, namely, Splenda Zero Calorie Sweeteners, Splenda Zero Granulated Calorie Sweeteners, Splenda Zero Calorie Sweetener Minis, Splenda Liquid Sweetener, Splenda Water Enhancer, Splenda Premium Sweet Tea, and Splenda Multi-Use Syrup display the Challenged Representation, "Suitable for people with diabetes," on the side or back labels (*See* "**Exhibits 1-8**," *supra*). Plaintiff and other consumers of artificial sweeteners, including the Splenda Products, pay particular attention to products' nutritional information and health claims, and therefore routinely view the back or side label of food and beverage products to understand their carbohydrate and sugar content, as well as their overall health value. Accordingly, consumers of the Products viewed and relied upon the "suitable for people with diabetes" representation on the Products' side and rear labels in making their purchase decisions.

49.     **Consumers Reasonably Believe the Products Can Help Them Manage Their Blood Sugar**. Plaintiff and other reasonable consumers were deceived by Defendant into believing that the Products conform to the Challenged Representations. Reasonable consumers interpret the Challenged Representations to mean that the Products can aid in managing their blood sugar and/or are suitable for their diabetic condition. Reasonable consumers have no way of knowing, nor do they have a reason to know or believe, that the Products cannot provided the advertised benefits.

50.     **Consumers Reasonably Believe the Challenged Representations are Implied**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**Health Claims**. Plaintiff and other reasonable consumers, including those without diabetes or pre-diabetes, interpret the Challenged Representations to mean that the Products are healthy sugar alternatives. Specifically, consumers understand Defendant's label claims that the Products "help[] manage blood sugar," are for "Diabetes Care," are the "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes," as an indication that the Products are uniquely healthy sugar alternatives, given their doctor and dietitian recommendation and their suitability for people with medical conditions like diabetes. In making their purchases, Plaintiff and other reasonable consumers, including those without diabetes or pre-diabetes, relied on Defendant's misrepresentations of health.

51.     **Material**. The Challenged Representations are material to reasonable consumers, including Plaintiff, because they have the potential to influence consumers' decision to purchase the Products, as set forth herein. Plaintiff would not have purchased the Products or would have paid significantly less for them if he had known that the Products' label claims were false and misleading, that the Products cannot aid in managing his blood sugar (but in actuality can worsen it), and that the Products cannot otherwise aid in "Diabetes Care."

52.     **Reliance**. Reasonable consumers, including Plaintiff, reasonably relied on the Products' Challenged Representations, including understanding the representations to be implied health claims, in deciding to purchase the Products.

53.     **Falsity**. The Products' Challenged Representations are false and deceptive because the Products do not provide the advertised benefits.

54.     **Consumers Lack Knowledge of Deception/Fraudulence**. Consumers, including Plaintiff, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products were incapable of providing the advertising benefits.

55.     **Defendant's Knowledge**. Defendant knew, or should have known, that its Products' Challenged Representations were false, misleading, deceptive, and unlawful at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations to cause Plaintiff and similarly situated consumers to purchase the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Products. Defendant, as the manufacturer, had exclusive control over how the Products were marketed and labeled, and Defendant readily and easily could have remedied the deception by stopping the use of the Challenged Representations. Instead, Defendant deliberately chose to market the Products with the Challenged Representations, thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product attributes that Defendant falsely advertised and warranted.

56.    **Detriment**. Plaintiff and similarly situated consumers would not have purchased the Products if they had known the Products could not provide the advertised benefits or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false as labeled, claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendant's material misrepresentations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**C.    No Adequate Remedy at Law**

57.    **No Adequate Remedy at Law**. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.  **Broader Statutes of Limitation**. The statutes of limitation for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitation under the FAL and CLRA. In addition, the statutes of limitation vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, Class members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

b.  **Broader Scope of Conduct**. In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

overall unfair marketing scheme to brand the Products with the Challenged Representations across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the labeling and advertising. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception**. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products as alleged herein. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that have resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' labeling and advertising is not true and providing accurate

39

information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and to prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction**. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **Procedural Posture—Incomplete Discovery & Pre-Certification**. This is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## V.   CLASS ALLEGATIONS

58.   **Class Definition**. Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The Classes Plaintiff seeks to represent are defined as follows:

> All residents of the United States who, within the four years prior to the filing of this Complaint, purchased the Products for purposes other than resale (the "Nationwide Class"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products for purposes other than resale (the "California Subclass").

> ("Nationwide Class" and "California Subclass," collectively, the "Class")

59.   **Class Definition Exclusions**. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

60.   **Reservation of Rights to Amend the Class Definition**. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

61.   **Numerosity**. The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands or hundreds of thousands throughout California and the United States. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

62.   **Common Questions Predominate**. Common questions of fact and law predominate over questions which may affect individual class members, including the following:

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

a.     Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.*;

b.     Whether Defendant used deceptive representations in connection with the sale of the Product in violation of California Civil Code Section 1750, *et seq.*;

c.     Whether Defendant represented the Products to have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.*;

d.     Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.*;

e.     Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*;

f.     Whether Defendant knew or by the exercise of reasonable care should have known its advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

g.     Whether Defendant made false and misleading representations in its advertising and labeling of the Product in violation of Business and Professions Code Section 17500, *et seq.*;

h.     Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i.     Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.     Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.     Whether Defendant's conduct constitutes a breach of warranty;

l.     Whether Defendant was unjustly enriched by its deceptive conduct;

m.     Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

n.        How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received.

63.    **Typicality**. Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

64.    **Adequacy**. Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

65.    **Superiority and Substantial Benefit**. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

66.    **Manageability**. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

67.    **Injunctive/Equitable Relief**. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

68.    **Inconsistent Rulings**. Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a

representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

69.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class purchased the Products under the false belief that the Products could provide the advertised benefits. Plaintiff and the Class relied upon Defendant's labeling, packaging, and advertising claims and would not have purchased the Products, or would paid significantly less for them, if they had known that the Products could not provide the advertised benefits.

70.     On February 9, 2023, written notice was sent to Defendant via certified U.S. mail pursuant to Civil Code Section 1750, *et seq*., which set forth the claims of the Class concerning the Products' false, misleading, deceptive, unlawful, unfair, and fraudulent claims.

## CAUSES OF ACTION

### COUNT ONE

**Violation of California Consumers Legal Remedies Act,**

**(California Civil Code 1750, *et seq*.)**

**(*On Behalf of the California Subclass*)**

71.     **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

72.     **California Subclass**. Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

73.     **CLRA Standard**. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

74.     **Goods/Services**. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

75.     **Defendant**. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

76.     **Consumers**. Plaintiff and members of the Class are "consumers," as defined by the

CLRA in California Civil Code §1761(d).

77.    **Transactions**. The purchase of the Products by Plaintiff and members of the Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

78.    **Violations of the CLRA**. Defendant violated the following sections of the CLRA by advertising and selling the Products to Plaintiff and the Class through the false, misleading, deceptive, and fraudulent Challenged Representations:

      a.  Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

      b.  Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

      c.  Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

79.    **Knowledge**. Defendant's uniform material representations regarding the Products were likely to deceive, and Defendant knew or should have known that its representations were untrue and misleading.

80.    **Malicious**. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sales of the Products.

81.    **Plaintiff Could Not Have Avoided Injury**. Plaintiff and members of the Class could not have reasonably avoided such injury. Plaintiff and members of the Class were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

82.    **Causation/Reliance/Materiality**. Plaintiff and the Class suffered harm as a result of Defendant's violations of the CLRA because they purchased the Products relying on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

83. **Section 1782(d) Notice Requirement**. Pursuant to California Civil Code, section 1782, on February 9, 2023, Plaintiff, on Plaintiff's behalf and on behalf of members of the Class, notified Defendant of its alleged violations of the CLRA via U.S. Certified Mail.

84. **Causation/Damages (Section 1782(d))**. As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

85. **Injunction**. Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the Class are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the Class.

**COUNT TWO**

**Violation of California False Advertising Law,**

**(Business & Professions Code 17500, *et seq.*)**

**(*On Behalf of the California Subclass*)**

86. **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

87. **California Subclass**. Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Product within the applicable statute of limitations.

88. **FAL Standard**. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

89. **False & Material Challenged Representations Disseminated to Public**. Defendant violated § 17500 when it advertised and sold the Products through unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Products' labeling, packaging, and advertising. These representations were false because the Products did not

conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

90.     **Knowledge**. In making and disseminating the Challenged Representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading and acted in violation of § 17500.

91.     **Intent to sell**. Defendant's conduct was specifically designed to induce reasonable consumers, like Plaintiff and the Class, to purchase the Products.

92.     **Causation/Damages**. As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT THREE

### Violation of California Unfair Competition Law,

### (Business & Professions Code Section 17200, *et seq.*)

### (*On Behalf of the California Subclass*)

93.     **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

94.     **California Subclass**. This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and the California subclass who purchased the Product within the applicable statute of limitations.

95.     **The UCL**. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    misleading advertising."

2        96.    **False Advertising Claims**. Defendant, in its advertising, labeling, and packaging of

3    the Products, made misleading statements regarding the quality and characteristics of the Products—

4    specifically, Defendant labeled, advertised, and markets the Products as drinks and  sugar

5    alternatives that "helps manage blood sugar" for "Diabetes Care," are the "#1 Recommended Brand

6    by Doctors and Dietitians," and are "Suitable for People with Diabetes," despite the Products'

7    inclusion of sucralose.

8        97.    **Defendant's Deliberately Fraudulent Marketing Scheme**. Defendant does not

9    have any reasonable basis for the claims about the Products made in Defendant's advertising and

10   on Defendant's packaging or labeling of the Products because the Products cannot provide the

11   advertised benefits. Defendant knew and continues to know that the Products cannot provide the

12   advertised benefits (i.e., diabetes care and blood sugar management), though Defendant

13   intentionally advertised and marketed the Products to deceive reasonable consumers into believing

14   that they could achieve the advertised benefits.

15       98.    **Misleading Labeling, Advertising Cause Purchase of Product**. Defendant's

16   labeling and advertising of the Products using the Challenged Representations continues to lead

17   reasonable consumers, including Plaintiff, to believe the Products can truly provide diabetes care

18   and blood sugar management benefits, when they cannot.

19       99.    **Injury in Fact**. Plaintiff and the Class have suffered injury in fact and have lost

20   money or property as a result of and in reliance upon Defendant's Challenged Representations—

21   namely, Plaintiff and the Class lost the money they paid for the Products they purchased from

22   Defendant.

23       100.   **Conduct Violates the UCL**. Defendant's conduct, as alleged herein, constitutes

24   unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair

25   competition and provides, in pertinent part, that "unfair competition shall mean and include

26   unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading

27   advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of

28   advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

101.    **No Reasonably Available Alternatives/Legitimate Business Interests**. Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

102.    **Business Practice**. All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue daily until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

103.    **Injunction**. Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products to "help[] manage blood sugar" for "Diabetes Care," "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes" when they are not. Plaintiff and the members of the Class also seek an order requiring Defendant to disclose such information and/or precluding Defendant from selling the Products.

104.    **Causation/Restitution**. As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and the Class were harmed in the amount of the purchase price they paid for the Products. Plaintiff and the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

105.    **Unfair Standard**. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

106.    **Injury**. Defendant's mislabeling of the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Products commensurate with their reasonable expectations, receive a Product of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. The injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

107.    **Balancing Test**. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

108.    **No Utility**. Defendant's conduct of falsely labeling and advertising the Products as drinks and a sugar alternative that can "help[] manage blood sugar" for "Diabetes Care," is the "#1 Recommended Brand by Doctors and Dietitians," and is "Suitable for People with Diabetes" have no utility and rather, harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

109.    **Legislative Declared Policy**. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

110.    **Unfair Conduct**. Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's representations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

111.    **Reasonably Available Alternatives**. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products.

112. **Defendant's Wrongful Conduct**. All the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

113. **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with "helps manage blood sugar," "Diabetes Care," "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes," respectively.

114. **Causation/Restitution**. Plaintiff and the Class have suffered injury in fact, have lost money, as a result of Defendant's unfair conduct. Plaintiff and the Class paid for a Product that could supposedly help with diabetes care and blood sugar management when it cannot. Plaintiff and the Class would not have purchased the Products if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### ***"Fraudulent" Prong***

115. **Fraud Standard**. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

116. **Fraudulent & Material Challenged Representations**. Defendant labeled the Products with, "helps manage blood sugar," "Diabetes Care," and "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes," respectively. These representations were deceptive, and Defendant knew or should have known of its deception. The representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

117. **Fraudulent Business Practice**. As alleged herein, the representations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

118. **Reasonable and Detrimental Reliance**. Plaintiff and the Class reasonably and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

detrimentally relied on the labeling on the Products to their detriment in that they purchased the Products without receiving the advertised benefits.

119.    **Reasonably Available Alternatives**. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products.

120.    **Business Practice**. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

121.    **Injunction**. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with, "helps manage blood sugar," "Diabetes Care," "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes," respectively.

122.    **Causation/Restitution**. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the Class paid for a product that they believed would provide them with blood sugar management benefits.

123.    Plaintiff and the Class would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

124.    **Unlawful Standard**. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

125.    **Violations of CLRA and FAL**. Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* and California Business and Professions Code sections 17500, *et seq.* as set forth below in the sections regarding those causes of action.

126.    **Additional Violations**. Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with

and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's representations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, and 1711, as well as the common law.

127.    **Unlawful Conduct**. Defendant's packaging, labeling, and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unlawful conduct. Defendant knew or should have known of its unlawful conduct.

128.    **Reasonably Available Alternatives**. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products.

129.    **Business Practice**. All the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

130.    **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with, "helps manage blood sugar," "Diabetes Care," "#1 Recommended Brand by Doctors and Dietitians," and "Suitable for People with Diabetes," respectively.

131.    **Causation/Restitution**. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Plaintiff and the Class would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products could provide the advertised benefits. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

///

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

## COUNT FOUR

### Breach of Express Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

132. **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

133. **Nationwide Class and California Subclass**. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Product within the applicable statute of limitations.

134. **Implied Warranty of Merchantability**. By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant— to wit, that the Products, among other things, could provide the advertised benefits.

135. **Breach of Warranty**. Contrary to Defendant's warranties, the Products do not conform to the Products' representation of drinks and sugar alternatives that can "help[] manage blood sugar" for "Diabetes Care," are the "#1 Recommended Brand by Doctors and Dietitians," and are "Suitable for People with Diabetes," respectively, and, therefore, Defendant breached its warranties about the Products and their qualities.

136. **Causation/Remedies**. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future

harm that will result.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

137.    **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

138.    **Nationwide Class and California Subclass**. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Product within the applicable statute of limitations.

139.    **Plaintiff/Class Conferred a Benefit**. By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

140.    **Defendant's Knowledge of Conferred Benefit**. Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

141.    **Defendant's Unjust Receipt Through Deception**. Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations.

142.    **Causation/Restitution**. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

///

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

a.    **Certification**: For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b.    **Declaratory Relief**: For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.    **Injunction**: For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d.    **Damages/Restitution/Disgorgement**: For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.    **Attorneys' Fees & Costs**: For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f.    **Pre-/Post-Judgment Interest**: For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and,

g.    **All Just & Proper Relief**: For such other and further relief as the Court deems just and proper.

///

///

///

///

///

///

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues and causes of action so triable.

DATED: August 17, 2023                    **CLARKSON LAW FIRM, P.C.**


/s/ Bahar Sodaify
Shireen M. Clarkson, Esq.
Bahar Sodaify, Esq.
Alan Gudino, Esq.
Ryan Ardi, Esq.

*Attorneys for Plaintiff and the Putative Class*