UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TC HEARTLAND, LLC,<br><br>Defendant. | Case No. 23-cv-04192-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

In this putative class action lawsuit, plaintiffs Steven Prescott, Richard Tilker, Samuel Garcia, and Rochelle Wilson allege that defendant TC Heartland, LLC has engaged in consumer fraud by marketing Splenda to health-conscious consumers (including those with Type 2 diabetes) as a sugar alternative with health benefits, even though Splenda's primary ingredient sucralose has purportedly been shown to cause and worsen diabetes. TC Heartland now moves to dismiss the case. For the following reasons, the Court denies the motion except as to plaintiffs' request for a corrective advertising campaign by TC Heartland.

## BACKGROUND[1]

Plaintiffs allege that TC Heartland's Splenda products advertise that they "help manage blood sugar," provide "diabetes care," are the "#1 recommended brand by doctors and dietitians," and are "suitable for people with diabetes." Dkt. No. 23, at 3–4. Plaintiffs argue that these claims are false or misleading and that various scientific studies have in fact shown that Splenda's primary ingredient sucralose is harmful to diabetics because it leads to blood sugar destabilization, raises blood glucose levels, causes insulin resistance, damages pancreatic beta-cells, harms the gut

---

[1] For the purposes of TC Heartland's Rule 12(b)(6) motion, the Court accepts as true the allegations in plaintiffs' complaint.

1  microbiome, promotes obesity, and is linked to genotoxicity and cancer. Plaintiffs cite a World
2  Health Organization (WHO) report concluding that there may be potential undesirable effects
3  from long-term use of non-sugar sweeteners (NSS) including sucralose, such as increased risk of
4  type 2 diabetes. *Id.* at 39. On this basis, plaintiffs contend that the 1999 approval of sucralose as a
5  food additive safe for the general population by the Food and Drug Administration (FDA) is based
6  on outdated research. Plaintiffs further allege that TC Heartland's advertising that Splenda is
7  "suitable for people with diabetes" and "helps manage blood sugar" goes beyond the FDA's
8  position on sucralose as being generally safe because, in plaintiffs' view, these statements imply
9  that Splenda products are healthy and will *improve* outcomes for diabetics. *Id.* at 46.

Plaintiffs raise concerns with the labeling on 8 Splenda products, two of which are shown below as examples: Diabetes Care Shake and Zero Calorie Sweetener. *Id.* at 6–7 (Exhibits 1–2).

 

Plaintiffs bring this lawsuit on behalf of a nationwide class and a California subclass. They assert the following claims: (1) violation of California's Consumer Legal Remedies Act (CLRA)

2

on behalf of the California subclass; (2) violation of California's False Advertising Law (FAL) on behalf of the California subclass; (3) violation of California's Unfair Competition Law (UCL) on behalf of the California subclass; (4) breach of warranty on behalf of the nationwide class and California subclass; and (5) unjust enrichment and restitution on behalf of the nationwide class and California subclass. Plaintiffs seek to enjoin TC Heartland from selling Splenda products with the purportedly deceptive labels and request monetary compensation for the allegedly false or misleading labeling. They also seek an injunction "requiring Defendant to engage in an affirmative advertising campaign to dispel public misperception of the Products resulting from Defendant's unlawful conduct." *Id.* at 66.

TC Heartland moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs' claims are preempted by the FDA's determination regarding the safety of sucralose and that plaintiffs rely upon a cherry-picked collection of studies that do not actually support their claim that sucralose is unsafe. TC Heartland also argues that plaintiffs lack Article III standing because they do not contend that they were physically injured, that plaintiffs fail to adequately plead that the Splenda products' labeling is likely to mislead reasonable consumers, and that plaintiffs' request for a corrective advertising campaign by TC Heartland violates the First Amendment.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6).

The Federal Rules require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule 12(b)(6) motion contending that a complaint fails to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

3

**II.     Regulatory and Statutory Background.**

The Food, Drug, and Cosmetic Act prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a). "A food shall be deemed to be adulterated if it is or if it bears or contains any food additive that is unsafe within the meaning of section 348 of this title." 21 U.S.C. § 342(a)(2)(C)(i). A "food additive shall, with respect to any particular use or intended use of such additives, be deemed to be unsafe for the purposes of the application of clause (2)(C) of section 342(a) of this title, unless there is in effect, and it and its use or intended use are in conformity with, a regulation issued under this section prescribing the conditions under which such additive may be safely used." 21 U.S.C. § 348(a)(2).

The FDA issued a regulation permitting the use of sucralose as a food additive in 1999. It first conducted a review of 100 scientific studies and various clinical trials and concluded that the food additive "sucralose has no adverse health effects on short-term or long-term glucose homeostasis or any other adverse effect in diabetic patients." *Food Additives Permitted for Direct Addition to Food for Human Consumption; Sucralose*, 63 Fed. Reg. 16417, 16430 (Apr. 3, 1998). After conducting this review, the FDA approved sucralose as a general-purpose sweetener. *See* 21 C.F.R. § 172.831(c) ("The additive [sucralose] may be used as a sweetener in foods generally, in accordance with current good manufacturing practice in an amount not to exceed that reasonably required to accomplish the intended effect.").

In addition to permitting sucralose's use as a food additive, the FDA's regulations provide that "[t]he use of an artificial sweetener in a food, except when specifically and solely used for achieving a physical characteristic in the food which cannot be achieved with sugar or other nutritive sweetener, shall be considered a use for regulation of the intake of calories and available carbohydrate[s], or for use in the diets of diabetics and is therefore a special dietary use." 21 C.F.R. § 105.3(a)(2). The legal significance of this "special dietary use" determination involves the labeling of foods containing such food additives: The FDA's regulations provide that if a food "containing the additive purports to be or is represented to be for special dietary use, it shall be labeled in compliance with [Section] 105 of this chapter." 21 C.F.R. § 172.831(d). Although

4

1  Section 105 sets forth specific labeling requirements for foods purporting to be useful in "reducing
2  or maintaining body weight," 21 C.F.R. § 105.66, Section 105 does not set forth specific labeling
3  requirements for foods purporting to be useful in the diets of diabetics.

## ANALYSIS

### I. Plaintiffs' Claims Are Not Preempted by The FDA's 1999 Determination.

In moving to dismiss plaintiffs' complaint, TC Heartland argues that the FDA's determination that the food additive sucralose is safe as a general-purpose sweetener preempts plaintiffs' claims. "Under the doctrine of implied conflict preemption, the statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022). In TC Heartland's view, plaintiffs "seek to use state law to usurp the FDA's authority to decide whether a substance is safe or injurious to health." Dkt. No. 25, at 15. TC Heartland contends that the FDA has already made a reasoned judgment about sucralose not being injurious to health for diabetics, and that plaintiffs' claims conflict with or frustrate this determination. *See* 63 Fed. Reg. at 16430 ("[B]ecause sucralose has no influence on insulin's action on blood glucose levels, it would not be anticipated to result in difficulties with insulin-based management of diabetes.").

Plaintiffs respond that their claims are not preempted because a recognition by the FDA that sucralose is generally safe does not give TC Heartland license to make specific health claims about sucralose's *benefits* for diabetics that are false or misleading. Dkt. No. 28, at 16. Plaintiffs thus argue that their state law claims targeted at the misleading labeling on Splenda products fall outside the scope of FDA preemption. *See Chavez v. Blue Sky Nat. Beverages Co.*, 268 F.R.D. 365, 375 (N.D. Cal. 2010) (noting that "the FDA has traditionally regarded state law as an additional layer of consumer protection that complements FDA regulation").

In addition, plaintiffs argue that their state law claims cannot conflict with FDA regulations because they assert that TC Heartland's Splenda advertising violates those very regulations. Plaintiffs allege an underlying violation of 21 C.F.R. § 101.14(d)(2)(iii), which requires health claims to be "complete, truthful, and not misleading." The FDA defines a health claim as "any claim made on the label or in labeling of a food, including a dietary supplement, that

5

expressly or by implication … characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). Plaintiffs allege that the labels on TC Heartland's products constitute misleading health claims because they link Splenda consumption with diabetes improvement. In plaintiffs' view, their state law claims effectively parallel or mirror the relevant federal labeling regulations and therefore cannot be seen as usurping federal law.

The Court agrees with plaintiffs that the FDA regulations cited by TC Heartland do not preempt plaintiffs' state law claims. Plaintiffs allege that TC Heartland makes claims that go beyond the safety of sucralose by promoting its Splenda products as "suitable for people with diabetes" and appropriate for "diabetes care" because they "help manage blood sugar." Determining whether these health claims are misleading because they imply that the products improve diabetes will not conflict with the FDA's determination that sucralose is generally safe. While TC Heartland's core argument is that plaintiffs are attempting to "second-guess the FDA's determination that sucralose is safe for human consumption," Dkt. No. 25, at 9, plaintiffs' primary allegation is that TC Heartland's health claims lead "reasonable consumers to mistakenly believe that the [Splenda] Products benefit diabetics and manage blood sugar levels." Dkt. No. 28, at 13. Plaintiffs' state law claims alleging that TC Heartland misleadingly advertised its products as beneficial to diabetics therefore do not "frustrate[] the purposes" of the FDA's determination that sucralose is generally safe. *Cohen*, 46 F.4th at 1028.

Plaintiffs' claims predicated on deceptive labeling violations are not preempted for the additional reason that they mirror 21 C.F.R. § 101.14, which prohibits misleading health claims on food labels. Because the state law claims asserted here parallel the FDA's advertising regulations, they cannot be preempted on that basis. *See Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1118 (N.D. Cal. 2010) ("Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the [federal statute], courts have repeatedly refused to find preemption.").

**II.     Plaintiffs Have Article III Standing To Bring This Lawsuit.**

TC Heartland also contends that plaintiffs lack Article III standing to bring this lawsuit because they do not allege that they suffered physical harm and instead contend only that they paid a price premium for the Splenda products based on the purportedly misleading labeling.

6

To establish Article III standing, a plaintiff must meet the three requirements of injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). TC Heartland argues that plaintiffs' dissatisfaction with the labeling alone does not amount to a cognizable injury. *See, e.g.*, *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *2 (N.D. Cal. July 19, 2012) (finding no Article III standing where plaintiff alleged that defendants failed to disclose the presence of arsenic in fruit juices but "plaintiff d[id] not allege that the products caused him any physical injury.… [or] that the products violated FDA guidelines for fruit juices.… [but] only … that he purchased and consumed the fruit juices [and] the levels of lead and arsenic in defendant's product were unsatisfactory to him").

Plaintiffs respond that they have standing because they expressly allege in the complaint that they "would not have purchased the Products or would have paid significantly less for them if they had known that the Products' label claims were false and misleading." Dkt. No. 23, at 47; *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103–08 (9th Cir. 2013) (holding that plaintiffs who alleged that they purchased "merchandise on the basis of false price information" and "would not have made the purchase but for the misrepresentation" had Article III standing).

Contrary to TC Heartland's arguments, plaintiffs have sufficiently alleged that they suffered an injury-in-fact for purposes of Article III. They allege that, but for TC Heartland's purported misrepresentation that the Splenda products were healthy, they would not have purchased the products (at least at their current price). *See Weizman v. Talkspace, Inc.*, 2023 WL 8461173, at *3 (N.D. Cal. Dec. 6, 2023) ("Since [plaintiff] alleged that she would not have paid anything to [defendant] had it provided the legally required disclosures, she experienced an economic injury sufficient to establish UCL standing."). Nor does *Boysen* support TC Heartland's position. In that case, the Court held that the plaintiff did not plead injury-in-fact because he did "not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice." 2012 WL 2953069, at *7. In contrast to *Boysen*, and like *Weizman*, plaintiffs here specifically alleged that they would not have purchased TC Heartland's Splenda products, or would at least have paid a reduced price, but for its labeling.

*Horti v. Nestle Healthcare Nutrition, Inc.*, 2023 WL 8613601 (9th Cir. Dec. 13, 2023), is instructive.[2] In that case, the plaintiffs alleged in a similar deceptive labeling lawsuit that defendant Nestle was misleading consumers through statements on its "Glucose Control" products such as "designed for people with diabetes" and "helps manage blood sugar." The Ninth Circuit held that plaintiffs had alleged a "tangible economic injury" sufficient to establish standing because they "alleged that they purchased a product they otherwise would not have bought but for the defendant's alleged misrepresentations." *Id.* at *1. For the same reasons, plaintiffs here have adequately alleged an economic injury and have Article III standing to assert their claims.

### III. Plaintiffs Adequately Plead that TC Heartland's Health Claims Are Misleading.

In addition to arguing that plaintiffs' claims are preempted and that plaintiffs lack standing, TC Heartland argues that plaintiffs' claims are implausible.

TC Heartland first argues that the FDA's prior determination that sucralose is safe and serves a "special dietary use" for diabetics renders plaintiffs' claims about its ill effects implausible. 21 C.F.R. § 105.3(a)(2). As noted above, however, 21 C.F.R. § 105 governs the labeling requirements for foods that purport to serve such special dietary uses. It does not necessarily represent the FDA's affirmative endorsement of such claims.

TC Heartland also argues that plaintiffs' cited studies do not support their sweeping claims about sucralose being unsafe. In TC Heartland's view, the studies do not establish causation (only at most correlation) between sucralose and weight gain, metabolic syndrome, and type 2 diabetes. TC Heartland notes that many of the studies do not even involve the Splenda products at issue or sucralose but instead discuss other artificial sweeteners like aspartame. TC Heartland additionally argues that several of plaintiffs' cited studies were done in animals and thus cannot be extrapolated to humans.

Plaintiffs counter that reasonable consumers are deceived by TC Heartland's health claims because they believe that Splenda products can help in managing diabetics' blood sugar levels,

---

[2] Because *Horti* was an unpublished memorandum disposition, the Court does not rely on it as precedent and instead cites it only for the persuasiveness of its reasoning. *See* 9th Cir. Rule 36-3(a), (b).

8

which plaintiffs allege is untrue. Plaintiffs argue that they need not show that sucralose is unsafe to prevail on their claims, only that sucralose is not beneficial to diabetics in controlling blood sugar. According to plaintiffs, the FDA's findings on the general safety of sucralose are inapposite because they do not address whether sucralose *improves* conditions for diabetics. Plaintiffs contend that their cited studies provide enough evidence to plausibly allege that specific claims about the possible health benefits of Splenda products are misleading.

In their briefing, plaintiffs and TC Heartland talk past one another as to what plaintiffs must allege to adequately plead their claims. While TC Heartland believes that plaintiffs must plausibly allege that sucralose is unsafe, plaintiffs respond that they need only plead that sucralose does not provide health benefits to those with diabetes. The Court agrees with plaintiffs that a showing that sucralose is unsafe is not necessary to allege the false advertising claims asserted here. Rather, plaintiffs must only plausibly allege that the labels on Splenda products mislead reasonable consumers with diabetes to believe that sucralose would improve their conditions.

Consequently, the Court need not delve into the specifics of the studies presented by plaintiffs or determine whether sucralose has deleterious effects on human health. Rather than focusing on the parties' factual dispute over the health risks (or lack thereof) of sucralose for diabetics, the Court need only ascertain whether the health claims presented on Splenda products go beyond the assertion that sucralose is safe. After all, and as TC Heartland does not seem to contest, none of the studies cited by plaintiffs show a *positive* health benefit of sucralose for diabetics. Health claims indicating as much could therefore plausibly be deceptive.

Courts in this circuit evaluate deceptive labeling theories under the reasonable consumer test, which requires plaintiffs to "demonstrate that a reasonable consumer is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see also Becerra v. Dr. Pepper/Seven-Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) ("[C]laims under the California consumer-protection statutes"—such as claims under the CLRA, FAL, and UCL—"are governed by the reasonable consumer test."). Meeting this standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

Plaintiffs here allege that the phrases "diabetes care," "suitable for people with diabetes," and "helps manage blood sugar" could mislead a significant portion of reasonable consumers to believe that TC Heartland's Splenda products provide health benefits for diabetics. This is so because words such as "care" and "help" could, according to plaintiffs, imply that the products have a therapeutic effect and provide a health benefit to diabetic consumers.

*Horti* is again instructive. In that case, the Ninth Circuit determined that phrases essentially the same as those at issue here could mislead a reasonable consumer. 2023 WL 8613601, at *1 (finding that the three analogous phrases "glucose control," "designed for people with diabetes," and "helps manage blood sugar" were plausibly misleading because a "a reasonable consumer could expect the product to exert some benefit on the control and regulation of blood sugar."). As in *Horti*, "a reasonable consumer could understand these representations [by TC Heartland] to indicate that the product[s] will have a positive effect on diabetes and blood sugar levels." *Id.*[3]

TC Heartland responds that the reasonable consumer test requires "more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Becerra*, 945 F.3d at 1228. TC Heartland argues that the phrase "suitable for people with diabetes" is not misleading to a significant portion of reasonable consumers because the Splenda products literally do not contain real sugar, which otherwise would exacerbate diabetes. TC Heartland also contends that the phrases "diabetes care" and "helps manage blood sugar" are not misleading because they accord with the FDA's finding that such zero-calorie artificial sweeteners are appropriate for the "diets of diabetics and [are] therefore a special dietary use." 21 C.F.R § 105.3(a)(2). In TC Heartland's view, a reasonable person would not interpret these phrases to mean that the Splenda products would cure or improve diabetes but only that the products would not worsen it.

---

[3] TC Heartland argues that the phrase "#1 recommended brand by doctors and dieticians" is not misleading because plaintiffs do not plead any facts suggesting this to be untrue. *See, e.g.*, *Amado v. Procter & Gamble Co.*, 2023 WL 3898984, at *9 (N.D. Cal. June 8, 2023) (holding that plaintiffs failed to adequately plead the falsity of statement "#1 Doctor Recommended" in Proctor & Gamble's Metamucil products). But of the 8 Splenda products here, none include this phrase alone. Dkt. No. 23, at 5–19. Because all of the products contain at least one of the other three phrases that the Court finds could plausibly mislead a reasonable consumer, the Court need not address at this time whether that phrase on its own could be deemed misleading.

10

1    Ultimately, the parties' "contrary interpretations of the product labels" present an issue that

2 "is not appropriate for resolution on a motion to dismiss." *Horti*, 2023 WL 8613601, at *1. This is

3 a "factual dispute" and "at this stage the [plaintiffs'] allegations must be taken as true." *Prescott v.*

4 *Abbott Laboratories*, 2024 WL 2843092, at *4 (N.D. Cal. June 5, 2024). Under this lens, plaintiffs

5 have pleaded facts satisfying the reasonable consumer standard and have therefore adequately

6 pleaded their various state law claims.

**IV.   Plaintiffs Cannot Require TC Heartland To Conduct an Advertising Campaign.**

As one form of relief, plaintiffs seek an injunction "requiring Defendant to engage in an affirmative advertising campaign to dispel public misperception of the Products resulting from Defendant's unlawful conduct." Dkt. No. 23, at 66. TC Heartland argues that this request for affirmative "corrective advertising" violates the First Amendment. *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985) (holding that compelling a party to engage in affirmative speech is only permitted if the content of that speech consists of "purely factual and uncontroversial information."). TC Heartland contends that there is no serious scientific disagreement about the safety of sucralose but that, even if there were, a court-mandated advertising campaign regarding its risks would violate the First Amendment by "elevat[ing] one side of a legitimately unresolved scientific debate." *Cal. Chamber of Commerce v. Council for Educ. & Research on Toxics,* 29 F.4th 468, 478 (9th Cir. 2022). Plaintiffs counter that commercial speech related to advertising is not entitled to the same First Amendment protection as non-commercial speech, so compelling clarifying disclosures would not be unconstitutional. *In re R. M. J.*, 455 U.S. 191, 200 (1982).

The Court agrees with TC Heartland that plaintiffs' requested injunctive relief would violate the First Amendment. Compelling speech is generally prohibited by the First Amendment. *See W. Va. State Bd. Of Educ. V. Barnette*, 319 U.S. 624 (1943). While the restrictions on compelling commercial speech are looser, *see, e.g.*, *Central Hudson Gas & Elec. V. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), requiring such affirmative speech is only permitted if the speech contains "purely factual and uncontroversial information." *Zauderer*, 471 U.S. at 651. Here, the plethora of competing scientific studies on the safety or potential health benefits or risks

11

of sucralose undermines plaintiffs' contention that any affirmative advertising regarding Splenda's risks could be merely factual and uncontroversial. Indeed, the FDA's 1999 determination of sucralose's general safety strongly cuts against plaintiffs' position. The Court therefore grants TC Heartland's motion to dismiss plaintiffs' request for this form of injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court denies TC Heartland's motion to dismiss except as to plaintiffs' request for injunctive relief in the form of an affirmative advertising campaign.

**IT IS SO ORDERED.**

Dated: July 18, 2024

P. Casey Pitts
United States District Judge